UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EDUARDO GUARCAS MARTIN,<br><br>                    Petitioner,<br>    v.<br><br>PAMELA BONDI et al.,<br><br>                    Respondents. | CASE NO. 2:26-cv-00749-DGE<br><br>ORDER DENYING PETITIONER'S MOTION FOR A TRO (DKT. NO. 7) |

This matter comes before the Court on Petitioner's motion for a temporary restraining order ("TRO") enjoining his removal from the Western District of Washington or the United States. (Dkt. No. 7.) The filing of the motion does not guarantee that a TRO will be granted. Rather, the record must support the relief requested, even when a person faces imminent removal and all the consequences that follow. Based on the record presented, Petitioner fails to establish relief should be granted and therefore the motion is DENIED.

## I    BACKGROUND

**A. Factual Background**

ORDER DENYING PETITIONER'S MOTION FOR A TRO (DKT. NO. 7) - 1

|   |   |
|---|---|
| 1 | Petitioner asserts he is 43 years old[1] and a native and citizen of Guatemala. (Dkt. No. 1 at 4.) Petitioner states he entered the United States in 1998 when he was 15 years old and has not left the United States since. (*Id*.) Petitioner is now married and has three children. (*Id*. at 6.) He studied theology, is an ordained chaplain, and has ministered to people in hospital and jails for the past 14 years. (*Id*.) |

Petitioner identifies he first encountered Immigration and Customs Enforcement ("ICE") in 2008 after an arrest for "an unknown drug related charge." (*Id*. at 4.) ICE detained Petitioner "but [he] was released to the custody of the Seattle Police Department." (*Id*.) ICE granted Petitioner parole under 8 U.S.C. § 1182(d)(5)(b) for "one (1) year" on November 19, 2008 when he was released to the Seattle Police Department. (*Id*.; Dkt. No. 1-3.) Petitioner worked as an informant for the Seattle Police Department from 2008 to 2021. (Dkt. No. 1 at 4.) Petitioner has two additional criminal arrests: one for driving under the influence in 2010 and one in 2011 for third degree assault and resisting arrest. (*Id*.) Petitioner received 364-day sentences for each; he spent only 92 days in jail with the rest of both sentences suspended. (*Id*.)

After Petitioner's 2011 arrest, Petitioner was issued a Notice to Appear ("NTA") and placed in removal proceedings. (*Id*.) Petitioner retained an attorney, Martin Nwizugbo, to assist him in applying for asylum and withholding of removal. (*Id*.) At Petitioner's August 20, 2013 individual merits hearing, Nwizugbo "inexplicably agreed to the withdrawal of [Petitioner's] applications with prejudice and accepted an order of removal." (*Id*.) Petitioner asserts "Nwizugbo never made any attempt to explain any part of [Petitioner's] immigration case to him" and "never explained to [Petitioner] what actions he was taking in the case nor the consequences of those actions on [Petitioner's] ability to apply for relief in the future." (*Id*. at 5.)

---

[1] Page one of the Petition identifies Petitoner is 34 years old.

Petitioner claims that on the date he was ordered removed he had "deferred action" "from DHS," and this "deferred action" continued all the way until 2021. (*Id*.) After the expiration of his deferred action, Petitioner retained a new attorney to assist in pursuing other potential avenues of relief from removal. (*Id*.) This attorney hopes to move to reopen Petitioner's removal proceedings (*id*. at 6), but as of the date of this Order, the record is void of any evidence that Petitioner's removal proceedings have been reopened.

On February 26, 2026, Petitioner reported for an ICE check-in. (Dkt. No. 1 at 6.) He was detained and taken to Northwest Immigration and Customs Enforcement Processing Center ("NWIPC"), where he has remained since. (*Id*.) Petitioner is scheduled to be removed to Guatemala as early as March 9, 2026. (Dkt. No. 5 at 1.)

**B. Procedural Background**

Petitioner filed a petition for writ of habeas corpus on March 4, 2026 seeking his release from detention. (Dkt. No. 1.) Petitioner asserts his detention violates the Fifth Amendment's Due Process Clause because Respondents "violated their own regulations in revoking parole" and because his continued detention "is not reasonably related to a legitimate government purpose." (Dkt. No. 1 at 7–8.) Along with his petition, Petitioner filed a simultaneous motion for temporary restraining order expressing fear he would be removed at 3:00 a.m. on March 5, 2026. (Dkt. No. 2 at 5.) The Court denied Petitioner's motion as moot because the identified March 5, 2026 removal would not comply with the Court's scheduling order requiring Respondents provide a petitioner at least 48 hours' notice (or 72 hours' notice if the period includes a non-workday) prior to transfer. (Dkt. No. 4.) The Court further "clarifie[d] that

Respondents shall not remove or transfer Petitioner without providing the required advance notice and filing such notice on the docket." (*Id.*)[2]

On the evening of March 5, 2026, Respondents filed a notice of intent to remove Petitioner to Guatemala as early as Monday, March 9, 2026. (Dkt. No. 5.) Petitioner filed a second motion for TRO the following morning. (Dkt. No. 7.) The Court ordered Respondents to file a response no later than March 6 at 5:00 p.m. and Petitioner to file any reply no later than March 7 at 12:00 p.m.[3] (Dkt. No. 8.) The matter is fully briefed. (*See* Dkt. Nos. 9, 11, 13.)

## II   ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 65(b) governs the issuance of a TRO. "The legal standard for a TRO is substantially identical to the standard for a preliminary injunction." *Facebook, Inc. v. BrandTotal Ltd.*, 499 F. Supp. 3d 720, 732 (N.D. Cal. 2020). To obtain injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Generally, a TRO

---

[2] Because the motion for a TRO was filed after business hours, the after-hours duty judge filed this docket entry.

[3] Respondents filed their response at approximately 2:36 p.m. on Friday, March 6. Petitioner's counsel then filed a reply at approximately 4:58 p.m. the same day. Then, shortly after 5:00 p.m., counsel called the after-hours emergency line requesting the Court issue a decision that evening. By docket entry, the after-hours duty judge informed counsel the Court would consider the briefing and issue a decision but that decisions were not issued based on counsel's preferred schedule. Afterward, counsel decided to file a second reply on March 7, which counsel titled as an "amended" reply. Rather than take the time to thoroughly consider and draft the content of the reply and permit the Court to efficiently review it, counsel chose to file unnecessary briefing for the Court to review, misuse the after-hours telephone line, and then file what could be characterized as a surreply without leave of the Court. Counsel is warned that such conduct in future matters may lead to sanctions.

is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. The moving party has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "The third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418 (2009).

The Ninth Circuit has also articulated an alternative "sliding scale" approach pursuant to which the first and third *Winter* factors are analyzed on a continuum; under such standard, a weaker showing on the merits, combined with a stronger demonstration on the balancing test, might warrant preliminary injunctive relief, assuming the second and fourth *Winter* elements are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–1135 (9th Cir. 2011). Under this "sliding scale" method, the movant need only raise "serious questions going to the merits," but the balance of hardships must tip "sharply" in the movant's favor. *Id.* at 1131–1132; *see also Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012).

**B. Petitioner's Due Process claim fails to identify "serious questions going to the merits" much less "a likelihood of success on the merits."**

Petitioner asserts his detention violates due process because "[R]espondents violated their own regulations in revoking parole" and because the detention "is not reasonably related to a legitimate government purpose . . . . This detention has no purpose at all." (Dkt. No. 1 at 8.) He cites several cases for the proposition that "[i]ndividuals paroled into the United States under humanitarian parole or similar programs develop a liberty interest in their continued freedom from detention and are entitled to certain due process protections." (Dkt. No. 7 at 4.)

As to the first basis, while the Court agrees with the general proposition that individuals released on parole under § 1182(d)(5)(b) are entitled to certain due process protections, *see*

*Zavorin v. Wamsley*, No. 2:26-cv-00173-DGE, 2026 WL 309733, *4 (W.D. Wash. Feb. 5, 2026) (holding the risk of erroneous deprivation is high where a petitioner on release under § 1182(d)(5)(b) was re-detained without compliance with 8 C.F.R. § 212.5(e)(2)(i)), Petitioner does not assert facts that indicate *he* is entitled to these protections.

First, the present record identifies the grant of parole was for one year only. (Dkt. No. 1-3.) Petitioner was then ordered removed on August 20, 2013. (Dkt. No. 1 at 4.) Then, during the time period where Petitioner was in removal proceedings and ultimately ordered removed, DHS granted him "deferred action" which lasted until 2021. (*Id*. at 5.) Petitioner does not identify under what authority he was granted deferred action.[4] He does not identify what protections he was entitled to when his liberty was based not on parole but on deferred action or how those protections continued approximately five years after the deferred action was terminated. The Court is not in a position to speculate as to the regulations the Respondents allegedly violated in revoking a parole that apparently ended as early as 2009 or, if not then, in 2013 when his removal order was entered or in 2021 when his deferred action expired.

In addition, Petitioner's arguments relating to due process rights in the revocation of parole setting are inapposite because Petitioner conceded his removability in 2013. (Dkt. No. 1 at 4.) Petitioner cites only cases where individuals remained in ongoing removal proceedings. *See Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB (HC), 2025 WL 3254999, *6 (E.D. Cal. Nov. 22, 2025) ("Here, not only is there no removal order against petitioner, but petitioner had also not even had an initial hearing in his removal proceedings when agents re-detained him.");

---

[4] Petitioner asserts he was granted "long standing parole . . . . based on his cooperation with both the local and federal authorities and acting as a confidential informant." (Dkt. No. 13 at 2)  It is not clear what Petitioner means by "long standing parole" and how it relates to his grant of "deferred action."

ORDER DENYING PETITIONER'S MOTION FOR A TRO (DKT. NO. 7) - 6

*Salazar v. Casey*, No. 25-CV-2784 JLS (VET), 2025 WL 3063629, *1 (S.D. Cal. Nov. 3, 2025) (Petitioner had only had one court hearing); *Noori v. LaRose*, No. 25-cv-03006-BAS-MMP, 2025 WL 3295386, *1 (S.D. Cal. Nov. 26, 2025) ("Petitioner filed and was pursuing his asylum petition" when he was detained); *Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1172 (D. Nev. 2025) (finding ongoing disputes about "Petitioner's eligibility for relief under the Cuban Adjustment Act in immigration court").

As to the argument that Petitioner's current detention "is not reasonably related to a legitimate government purpose," such argument is belied by the fact that Petitioner has a 2013 final removal order and Respondents have scheduled his removal as early as March 9, 2026. Accordingly, Petitioner's current detention is related to the government's legitimate purpose of removing a person who is subject to a final order of removal—which as of today remains valid and enforceable.

Finally, Petitioner's "amended" reply offers a new argument based on the "danger creation" exception applied in § 1983 claims against state actors. (*See* Dkt. No. 13 at 4) (citing *Woods v. Ostrander*, 879 F.2d 583 (9th Cir. 1989); *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992); *Muer v. City of Flasgow Police Dept.*, 227 F.3d 1082 (9th Cir. 2000)). But Petitioner fails to explain how a §1983 theory of civil liability against state actors has any bearing on immigration habeas relief sought against federal actors.

Accordingly, the Court finds Petitioner does not allege facts sufficient to show "a likelihood of success on the merits" or even "serious questions going to the merits" of his claim that his detention is in violation of due process. The Court acknowledges the impact that will be felt by Petitioner's family and friends if he is removed and Petitioner's desire to remain in the

United States, but having made this finding the Court does not further consider the remaining *Winter* or *Cottrell* factors.

### IV   ORDER

Having considered Plaintiff's second motion for a TRO (Dkt. No. 7), and for the reasons stated herein, the Court DENIES Plaintiff's second motion for a TRO.

The Court further ORDERS that the parties shall file a joint status report no later than **March 11, 2026** informing the Court as to the status of this matter. The Clerk shall calendar this event.

Dated this 7th day of March, 2026.

David G. Estudillo
United States District Judge